**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MIA McEACHERN and | : | |
| DONALD J. McEACHERN, | : | Case No. 2:18-cv-00395-MRH |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE JUNIOR REPUBLIC IN | : | |
| PENNSYLVANIA and GEORGE | : | |
| JUNIOR REPUBLIC, | : | |
| Defendants. | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendants George Junior Republic in Pennsylvania ("GJR") and George Junior Republic ("Parent") (collectively, "Defendants"), through their counsel, respectfully submit this Brief in Support of their Motion for Summary Judgment.  Plaintiffs Donald and Mia McEachern (collectively, the "McEacherns" or "Plaintiffs") formerly worked for GJR.  They claim that they worked through break periods but were not paid overtime for them, in violation of federal and state wage and hour laws.  Plaintiffs' claims should be dismissed because: (1) there is no dispute that when the McEacherns reported hours that they allegedly worked to GJR, they were paid for them; and (2) when the McEacherns did not report the hours of work for which they are now claiming compensation, GJR did not "suffer or permit" such work because it did not know about it.  Alternatively, all claims against Defendants should be dismissed because they are exempt from wage and hour laws pursuant to houseparent exemption under the Fair Labor Standards Act ("FLSA").

# I.    BACKGROUND

GJR operates a private, non-profit, 24-hour residential treatment facility for delinquent and dependent boys, aged from eight to eighteen, in Grove City, Pennsylvania.  Exs. 1 (Jones) (p.7); 2 (Losasso) (pp.9, 11, 25, 39); 4 (Gerwick) (pp.6-7).  Its 500-acre campus is home to over 300 youth.  Exs. 1 (p.11); 2 (pp.13, 23).  GJR offers residential living facilities for its youth, fully accredited educational programs, a wide variety of therapeutic activities, and continuing care.  Exs. 1 (pp.8-9); 3 (Morris) (pp.15-16).  *See* www.georgejuniorrepublic.org.  Presently, GJR employs more than 500 individuals in Grove City.  Ex. 5 (Gregs I) (pps.4-5); 6 (Greggs II) (p.5).  It is a non-profit operating subsidiary of the Parent.  Exs. 2 (p.10); 3 (pp.8-9).

GJR at one time maintained approximately 30 open-living cottages in Grove City for the youth, who live on campus during school semester and, often, during the summer, but that number has decreased in recent years as smaller units have been phased out.  Exs. 7 (Jones Declaration); 1 (pp.9-10); 2 (pp.37-38); 3 (pp.15-16).  When the McEacherns started their employment, the cottages either housed up to eight or ten youth.  Ex. 2 (p.35).  The cottages are staffed principally by Counselor/Parents.  Exs. 2 (p.26); 3 (pp.16-17; 62-63).  The Counselor/Parents, who must be a husband and wife team, live in each cottage (at GJR's expense), and are principally responsible for supervising the youth assigned to that cottage or home when they are not at school or engaged in other activities and implementing GJR's behavioral model.  Exs. 8 (Mia) (pp.29-31); 1 (p.28-29), 3 (pp.15-16, 60-61); 9 (GJR_00000413-414), 10 (GJR_00000209-210).  The Counselor/Parents live in attached quarters that are completely separate from the living quarters for the youth.  Ex. 3 (p.17).  While working, the Counselor/Parents are not directly supervised during their work, e.g., there is no one directly

monitoring their day-to-day work activities and their interaction with the youth.  Exs. 2 (p.69); 3 (pp.71, 126).

When the McEacherns started at GJR, Counselor/Parents worked one of two schedules: five days on and two days off (for 10-youth cottages); or ten days on and four days off (for eight-youth cottages).  Exs. 11 (Donald) (pp.94-103); 3 (p.68).  While the hours of work vary on the first and last days of the schedule, the Counselor/Parents' typical work day begins at 6:00 a.m. and ends at 10 p.m. at night.  Ex. 11 (p.97).  During the typical 16-hour shift, each Counselor/Parent in each cottage was expected to self-schedule five hours of uncompensated free time if in an eight-bed cottage and, since January 3, 2015, three hours of uncompensated free time if in a ten-bed cottage.  Ex. 7; 3 (pp.75-78).  In other words, during a 16-hour shift in an eight-bed unit, the husband and wife team may work together for six hours, the husband will work by himself for five hours, and the wife will work by herself for five hours, resulting in the husband and wife each working 11 hours and having five hours of breaks (although the husband and wife could both take time off together, as well).

Factoring in the first and last days of their schedules, which are shorter than the typical work day, Counselor/Parents are scheduled to work 52 hours per work week.  Exs. 4 (pp.49-50, 99); 12 (Mia's Equal Opportunity Family Living Agreement); 13 (Donald's Equal Opportunity Family Living Agreement).  GJR pays Counselor/Parents a "salary" for the 52 hours of work in each work week.  Ex. 3 (p.72).[1]  The salary consists of 40 hours at straight time and 12 hours at time-and-one-half.  Exs. 3 (pp.43, 72, 89); 12; 13.  If Counselor/Parents work additional hours outside of their schedule, they are paid for those hours at the appropriate rate.   Similarly, if

---

[1] At the start of their employment, the McEacherns were paid an annual salary of $22,500, less all applicable deductions.  Exs. 12; 13.

Counselor/Parents work during their free time and are not able to take it later, they are paid for that work.  Ex. 3 (pp.72-75, 78-79).

At 10 p.m. of each evening which the Counselor/Parents are working, they are relieved by an Evening Childcare Worker (or "Night Staff"), who remains on duty until 6:00 a.m. the next morning, when the Counselor/Parents begin their next work day.  Exs. 11 (p.79); 8 (p.76). On their days off, the Counselor/Parents are relieved of their duties by a Counselor/Parent Assistant (or Relief Counselor/Parent, as he or she is sometimes called).   Ex.8 (pp.72-74).

GJR hired the McEacherns as Counselor/Parents on December 1, 2014.  Ex. 11 (p.18). The McEacherns, like all Counselor/Parents, each signed an agreement upon hire. That agreement, which is titled "Equal Opportunity Family Living Agreement" ("C/P Agreement") includes the following pertinent terms and conditions of employment:

- The work week commences at 2:00 p.m. on Saturday and ends the same time the following Saturday;
- The "normal work week shall consist of 52 hours of work and a normal day of work shall usually be 6:00 a.m. to 10:00 p.m. with five hours of uncompensated free time within that period;"
- "Employees may trade specific assigned hours with their co-Counselor/Parents as long as it results in each working eleven hours per day.  Overtime in excess of the schedule must be approved in advance by the supervisor or, if an emergency, immediately thereafter;"
- As compensation for all services rendered under this Agreement, [GJR] will pay the Employee each week for 40 hours of straight time and 12 hours of overtime . . . ."

Exs. 11 (pp.29-30); 8 (pp.27-28); 3 (pp.95-97); 12; 13.   Donald McEachern testified that he understood that overtime had to be approved in advance by the supervisor, or if in an emergency, immediately thereafter. Ex. 11 (pp.54; 194).

The McEacherns worked in two cottages during their tenure with GJR.  Their assignments were Wettick cottage, from December 2014 to June 2017; and Glenn cottage, from June 2017 until the end of their employment in January 2018.  Exs. 11 (pp.40-42).  At Wettick, an eight-bed unit, the McEacherns' schedule was ten days on, four days off.  Ex. 11 (p.58-60).

While at Wettick, the McEacherns reported to Brad Morgan, a Campus Director.  Ex. 8 (p.39).

At Glenn, a ten-bed unit, the McEacherns worked for five days on and two days off.  Ex. 11

(pp.60-61).  Their supervisor at Glenn was Darrell Reppart for a brief period of approximately

one month, and then it was changed back to Brad Morgan for the remainder of their employment.

Ex. 8 (p.39).  Morgan and Reppart (during the month he was their supervisor) met with the

McEacherns weekly, but otherwise did not directly oversee their work. Exs. 11 (pp.87-89); 14

(Morgan II) (p.8).

Mia McEachern was fired on January 16, 2018 for falsifying paperwork.  Ex. 15

(GJR_00000477-478).  Because counselor/parents are husband and wife teams, Donald

McEachern's employment was also terminated.  Exs. 16 (GJR_00000396); 12, 13 (C/P

Agreements) ("Employee recognizes that if his or her co-Counselor/Parent is terminated with

less than 14 days notice that [GJR] may also terminate Employee with or without notice.").

Subsequent to their terminations, the McEacherns filed the instant lawsuit.  It appears their sole

claim is that they worked during what should have been their daily free time/breaks, and were

not paid for that time.  Ex. 8 (pp.55-56).  For example, the McEacherns claim that on any given

work day, neither of them were able to take their five hours of free time, and were not paid by

GJR for that time.  They claim that Defendants violated the minimum wage and/or overtime

provisions of the FLSA and the PMWA, as well as the requirements of the Wage Payment and

Collection Law ("WPCL") by not paying them overtime.

Defendants vigorously contest the notion that the McEacherns are entitled to recover

under federal or state wage and hour laws.  As detailed below, the McEacherns fastidiously

reported to GJR those times they were unable to take their breaks, e-mailing or calling their

supervisor or scheduler.  And when the McEacherns told GJR they worked, GJR paid the

McEacherns for the overtime hours that they reported.   But even if this Court assumes that the

McEacherns worked hours for which they were not paid, it still must decide whether GJR

"suffered or permitted" such work.  And on that issue, there is no dispute that the McEacherns

did not report those to their supervisor or to anyone else at GJR.  Because GJR would have had

no way of knowing about these alleged hours, it did not suffer or permit the work and is not

obligated to pay for it.

## II.        ARGUMENT

Rule 56 "'mandates the entry of summary judgment . . . against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's case . . . .'"

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986)).

> [W]hen the moving party has carried its burden under Rule 56(c),
> its opponent must do more than simply show that there is some
> metaphysical doubt as to the material facts . . . . Where the record
> taken as a whole could not lead a rational trier of fact to find for
> the nonmoving party, there is no genuine issue for trial.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586-87 (1986)).

## A.        Suffered or Permitted

### 1.        Work is only Compensable if Suffered or Permitted

The FLSA provides that an employer may not employ its non-exempt employees for a

workweek longer than forty hours unless the employee is paid overtime compensation at a rate

not less than one and one-half times his or her regular rate.  *Stanislaw v. Erie Indem. Co.*, C.A.

No. 07-1078, 2012 WL 517332, at *3 (W.D. Pa. Feb. 15, 2012); 29 U.S.C. § 207(a)(1).  The

term "employ" is defined in the Act as including "to suffer or permit to work."  29 U.S.C. §

203(g).  Thus, in order to prevail on an FLSA claim for unpaid overtime, employees must prove that they "were suffered or permitted to work without compensation." *Stanislaw*, 2012 WL 517332, at *3 (internal quotation marks omitted); *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014).

Courts have interpreted the "suffered or permitted" language in the FLSA to mean that an employee must demonstrate that (1) he or she worked overtime hours without receiving compensation, and (2) the employer knew or should have known of the overtime work.  *Id.* (citing *Allen v. Board of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007)). *See also Gulick v City of Pittston*, 995 F.Supp.2d 322, 338 (M.D. Pa. 2014) ("To recover for such uncompensated overtime work, a plaintiff must demonstrate that the defendant-employer had either actual or constructive knowledge of the plaintiff's overtime work.") (internal quotation mark omitted).

The critical inquiry in determining whether an employer suffered or permitted uncompensated hours is "not whether the work was done voluntarily, but rather whether the Plaintiff was in fact performing services for the benefit of the employer with the knowledge and approval of the employer."  *Summerfield v. Perfect Photo Division of Photo-Electronics, Inc.*, No. 81-3017, 1983 WL 31221, at*6 (E.D. Pa. Jun. 16, 1983).  Constructive knowledge exists where "an employer exercising reasonable diligence would become aware that an employee is working overtime."  *Garner v. Chevron Phillips Chem. Co.*, 834 F.Supp.2d 528, 544 (S.D. Tex. 2011) (internal quotation marks omitted).  An employee must be compensated for time worked outside of his or her scheduled shift even if the employer did not ask that the employee work those hours, but this requirement applies only if the employer knows or has reason to believe that the employee is continuing to work.  *Wood v. Mid-America Mgmt. Corp.*, 192 Fed. App'x 378,

380 (6th Cir. 2006).    If "an employer has no knowledge that an employee is engaging in overtime work and the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work," the failure to pay overtime is not a violation of the FLSA. *Gulick*, 995 F. Supp. 2d at 338. *See also Garner*, 834 F.Supp.2d at 562 (plaintiff failed to produce any evidence demonstrating that the employer had actual or constructive knowledge that she was working the alleged overtime hours; she never complained about nor reported the overtime hours to her employer).

Courts holding in favor of the employer on the issue of whether or not the employer had knowledge of an employee's alleged uncompensated overtime hours have considered a variety factors, including:

- A failure of the employee to report and/or complain about the alleged uncompensated hours;[2]
- A lack of evidence showing that the employer knew that the employee was working the alleged hours;[3] and
- It was against company policy to work overtime hours, or to work through breaks without prior approval.[4]

Importantly, Courts of Appeal have affirmed grants of summary judgment in favor of an employer where the employee is tasked with reporting overtime hours and fails to follow reporting practices and procedures.    These courts have held that an employer should not be held liable under the FLSA for uncompensated hours, where the

---

[2]      *See Whitaker v. Pac. Enters. Oil Co.*, No. 91-5093, 1992 WL 44729, at *1 (10th Cir. March 9, 1992); *Faery v. Weigand-Omega Mgmt., Inc.*, Civil Action No. H-11-2519, 2012 WL 3063899, at *5 (S.D. Tex. Jul. 26, 2012); *Garner*, 834 F.Supp.2d at 562; *Gaylord v. Miami-Dade Cnty.*, 78 F. Supp.2d 1320, 1323 (S.D. Fla. 1999).

[3]      *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005); *Hall v. Guardsmark, LLC.*, Civil Action No. 11-213, 2013 WL 4855328, at *14 (W.D. Pa. Sept. 11, 2013); *Garner,* 834 F.Supp.2d at 562.

[4]      *See Summerfield*, 1983 WL 31221, at *6; *Davis v. Food Lion*, 792 F.2d 1274, 1278 (4th Cir. 1986).

employer had no way of knowing that the undocumented hours were being worked by the employee.

For example, in *Wood v. Mid-America Management Corp.*, 192 F. App'x 378 (6th Cir. 2006), the court held that the plaintiff was not entitled to overtime wages for his unreported hours.  There, the employer (a manager of commercial and residential properties) required the plaintiff to complete and sign his own time cards.  *Id.* at 379.  He would then submit them to the property manager for processing.  *Id.*  On the time cards he would document his regular hours and record any overtime work that he performed during the pay period.  *Id.*

When the plaintiff would work after normal business hours, there were no supervisors present to monitor him.  *Id.*  He admitted that he expected the people in charge of processing his time cards to rely on his time cards to pay him, and that he was paid for overtime when properly reported it.  *Id.*  The plaintiff did not keep any records of the overtime he failed to report, but said that he had figured out himself that he worked but did not report an average of more than five hours a day.  *Id.* at 380.  Because the plaintiff did report some overtime hours, the employer had no reason to suspect that he neglected to report other overtime hours.  *Id.* at 380-81.  Indeed, when the plaintiff allegedly communicated to his supervisor that he was not reporting all overtime hours, his employer told him that he could not get paid for the hours if they weren't written down or reported.  *Id.* at 381.  The court stated:

> At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself.  Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions.  An employer cannot satisfy an obligation that it has no reason to think exists.

> And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*Id.*

Similarly, *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), involved an employee who knew that overtime hours were supposed to be reported on timesheets. *Id.* at 414. The employer regularly paid for his reported overtime hours. *Id.* Further, the plaintiff testified that had he reported the overtime hours, he would have been paid for that time. *Id.* The court held that there was no genuine issue of material fact as to whether any official of the store knew or should have known that the plaintiff had been working uncompensated overtime. *Id.* The plaintiff "omitted the inclusion of those hours from his time sheet even though he admittedly knew that he would have been paid for those hours." The court held that:

> An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of s 207(a).

*Id.* Thus, the employer's failure to pay overtime did not violate the FLSA. *Id.*

The United States Court of Appeals for the Sixth Circuit also decided in favor of the employer in the case of in *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012). There, an employee handbook provided that employees who worked a shift of six hours or more would receive an unpaid meal break that would be automatically deducted from their pay checks. *Id.* at 872. Employees were instructed to record all of their hours worked during these automatically deducted meal breaks in an "exception log" whether the meal break was

partially or entirely interrupted. *Id.* Plaintiff recorded her interrupted meal breaks in the exception log for a period of time (for which she was compensated) but stopped. *Id.* She did not have records of when her meal breaks were interrupted. *Id.*

The court found that although the plaintiff told her supervisors she was not getting her meal breaks, she never told them that she was not being compensated for the missed meal breaks. *Id.* at 876. Accordingly, there was "no way [the employer] should have known that she was not being compensated for missing her meal breaks. Therefore, her claims fail." *Id.* The court concluded that:

> Baptist established a system to compensate its workers for time worked during meal breaks. *When White utilized the system she was compensated and when she failed to use the system she was not compensated.* Without evidence that Baptist prevented White from utilizing the system to report either entirely or partially missed meal breaks, White cannot recover damages from Baptist under the FLSA.

*Id.* at 877 (emphasis supplied). *See also Dikker v. 5-Star Team Leasing, LLC*, 243 F. Supp. 3d 844, 853-54 (W.D. Mich. 2017) (finding for employer where plaintiff knew how to record her time but she never attempted to record the hours she claimed to have worked); *Sutton v. CHSPSC, LLC*, No. 116CV01318STAEGB, 2018 WL 3318961, at *9 (W.D. Tenn. July 5, 2018), *appeal dismissed*, No. 18-5790, 2018 WL 7140579 (6th Cir. Dec. 21, 2018) (plaintiffs' claims dismissed where they were free to record their time but did not always do so). *Accord, Johnson v. Cameron Int'l Corp.*, No. CV H-16-262, 2017 WL 3658901, at *7 (S.D. Tex. Aug. 24, 2017) (employer did not have constructive knowledge of alleged overtime hours where supervisor did not monitor plaintiff).

Courts in Pennsylvania have granted summary judgment in favor of an employer where there has been a lack of evidence showing that the employer knew that the employee was

working the alleged hours.  For example, in *Hall v. Guardsmark, LLC.,* this court held that the employer did not violate the FLSA regarding the plaintiffs' post-shift work, because the work was not "suffered or permitted."  2013 WL 4855328, at *14 (W.D. Pa. Sept. 11, 2013).  In this case, former security officers brought an action for uncompensated work performed before and after their shifts.  2013 WL 4855328, at *1.  The plaintiffs maintained that they worked under a written policy requiring all officers to arrive early to perform pre-shift work, stay late for post-shift work, and that the supervisors saw them working these "off-the-clock" hours.  *Id.* at *3. The employer's written policy stated that security officers must record on their Weekly Time Record the exact start and end times of their shifts, which was to be signed weekly.  *Id.* at *2. The plaintiffs alleged that they tracked hours using a Daily Activity Report form, but that they were only allowed to write on these forms the hours they were authorized to work, rather than the actual hours worked each shift.  *Id.*  Thus, they argued that they were paid on the basis of their assigned shifts rather than on their actual work start and end times.  *Id.*

On the issue of the plaintiffs' post-shift work, the court granted the employer's motion for summary judgment because they "failed to point to any evidence to support their claims[.]" *Id.* at *14.  The court found that not only did a supervisor tell Hall that she was not to engage in post-shift work, she was even disciplined on one occasion for staying after her shift.  *Id*. at *13. Further, plaintiffs' declaration statements that they had to perform post-shift work contradicted their deposition testimony on the subject.  *Id.* at *14.

Further, the United States District Court for the Eastern District of Pennsylvania entered judgment for an employer in the case of *Summerfield v. Perfect Photo Division of Photo-Electronics, Inc.*, No. 81-3017, 1983 WL 31221 (E.D. Pa. Jun. 16, 1983).  The plaintiff, a camera salesperson, worked 44.5 hours per week, with one hour off each day for lunch.  *Id.* at *1.  He

claimed that he often worked throughout his lunch break and was not compensated for this time. *Id.* at *2. The court noted that he was told to close the store if necessary to take his lunch. *Id.* at *6. Although the owners of the store saw the plaintiff eating his lunch at the store on occasion, working though a lunch break was "against the express terms of Plaintiff's employment," and the plaintiff never informed his employer that he was not taking his hour for lunch and expected to be paid for that time. *Id.* at *2-6. The court held that he failed to establish that the employer was aware of any overtime work. *Id.* at *6. *Accord Faery*, 2012 WL 3063899, at *5 (where there was no evidence that "Faery ever advised [her supervisor] of any specific overtime hours worked or of a legitimate reason for any overtime," the evidence did not "raise a genuine issue of material fact that [the employer] knew when Faery was working more than 40 hours per pay period and 'suffered or permitted' her to work the overtime hours.").[5]

In short, an employee has the burden of proving that the employer knew or should have known of uncompensated overtime hours. *Allen*, 495 F.3d at 1314; *Gulick*, 995 F.Supp. 2d at 338. Courts have granted summary judgment in favor of the employer where the employees

---

[5] Other courts have granted summary judgment in favor of the employer where the work was not "suffered or permitted." *See Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (where plaintiff argued that employer had access to information pertaining to his off-the-clock work, district court properly granted summary judgment because plaintiff was required to obtain prior approval to work overtime and plaintiff ignored those policies; moreover, "the fact that [his supervisor] had access to the Task Force's activities means that perhaps he could have known that Newton was working overtime hours, but the question here is whether he should have known"); *Whitaker*, 1992 WL 44729, at *2-3 (summary judgment affirmed where plaintiff claimed he was discouraged from reporting overtime hours, but employer only discouraged overtime work, which was not a violation of FLSA); *Davis*, 792 F.2d at 1275-76 (summary judgment affirmed where employer had a policy prohibiting employees from working off-the-clock hours and plaintiff was aware of this policy, notwithstanding argument by plaintiff that performance standards he had to meet were "unattainable" without working off the clock); *Garner*, 834 F.Supp.2d at 562 (summary judgment granted where "Achilles' heel" in plaintiff's case was that she failed to produce any evidence that her supervisor or anyone above him was advised of her overtime); *Gaylord*, 78 F. Supp.2d at 1326-27 (S.D. Fla. 1999) (where employees had to obtain prior approval to work overtime and plaintiff did not include any of the hours that he claimed were uncompensated in his administrative records, summary judgment granted because plaintiff "failed to discharge his burden of demonstrating by a preponderance of the evidence that . . . the County had knowledge or should have had knowledge of his overtime work.").

were compensated when they utilized the employer's process for reporting some overtime hours, but failed to report uncompensated hours for which they are claiming relief. *See, e.g. White*, 699 F.3d at 876 (judgment for employer where employee was compensated when she reported her time and was not compensated when she failed to report her time); *Forrester*, 646 F.2d at 414 (employer not liable where employee was regularly paid for the hours he reported and employee admitted he would have been paid for additional hours had he reported them); *Wood*, 192 F. App'x at 381 ("[A]n employee cannot undermine his employer's efforts to comply with the FLSA by . . . omitting overtime hours for which he knew he could be paid."). Further, Pennsylvania courts have held that an employer is not liable where the employee claimed that he or she worked uncompensated overtime hours but there was a lack of evidence showing that the employer knew of the hours, or the employee did not complain or record the overtime hours. *See, e.g. Hall*, 2013 WL 4855328, at *14 (employer did not know that employee was engaging in post-shift work); *Summerfield*, 1993 WL 3221, at *6 (plaintiff failed to establish that his employer was aware of any overtime work).

It is undisputed here that the McEacherns: (a) reported to their Campus Director any time that they did not get their five hours off; (b) did not report to their Campus Director when they were able to get their five hours off, (c) worked without regular or close supervision; and (d) were paid when GJR did know that they worked outside their regular schedule.

### 2. GJR did not Suffer or Permit any Uncompensated Work by the McEacherns

#### a. Plaintiffs Were Required To Report Their Time Worked

As Counselor/Parents, the McEacherns' work was largely unsupervised. They had weekly one-hour meetings with their supervisors, the Campus Directors, but otherwise, the day-to-day details of their jobs were left to them. Indeed, when the McEacherns were hired by GJR,

they signed a C/P Agreement, which stated that employees would normally work between 6:00 a.m. and 10:00 p.m., "with five hours of uncompensated free time within that period." Ex. 12, 13. That free time was self-scheduled. The C/P Agreement specifically provided that Counselor/Parents could "trade specific assigned hours with their co-Counselor/Parents on any given day as long as it results in each working eleven hours per day." Exs. 12, 13. According to GJR's former COO, Jeff Morris, even though it would be easy for GJR simply to schedule the Counselor/Parents' free time, GJR allows them to self schedule for the employees' convenience: "I could schedule them easily. It would be very simple to do. This works much better and most counselor/parents want that flexibility . . . . [They] have their own children. If a counselor/parent wants to go to a soccer game if their child plays soccer, they can set their own schedule." Ex. 3 (pp.76-78).

What that flexible approach to scheduling creates is "an honor system" with respect to free time. There are "just so many things in a counselor/parent's lifestyle to enable them to have this free time to go out and leave our campus and not be on duty and go somewhere. They have the freedom to do that." Ex. 3 (p.77). That freedom of scheduling, though, means that if they work during their free time, GJR does not know about it unless the time worked is documented. Exs. 5 (pp.18-19); 4 (p.78) ("If it's not documented, we wouldn't know."). As Morris stated, Counselor/Parents "are to work 52 hours in the pay period and it's an honor system, so if a counselor/parent works 52 hours and turns in anything beyond that, we pay them. If they don't turn them in, we can't pay them. We don't know about it. I'm saying that they're told to work 11 hours a day at their discretion at their schedule. If they work that 11 hours a day, then that salary covers it. If they work over 11 for some reason, then tell us the reason and we'll pay you." Ex. 3 (p.79).

To that end, GJR has established various policies and recordkeeping requirements designed to make the "honor system" work for Counselor/Parents.[6]  There is, to start, preprinted, prepopulated forms that set forth the fixed 52-hour work week for each week of the year, a/k/a the "Counselor/Parent Pay Period Schedule" ("Schedule").  *See, e.g.,* 5 (p.18-19). Counselor/Parents get these forms from their supervisor at the beginning of the year.  Ex. 11 (pp.94-95); 14 (p. 25).[7]  The Schedule has an "A" box and a "B" box at the bottom, where Counselor/Parents can explain why they did not get their five hours off, if necessary to do so.[8] Mia McEachern testified that she knew how to use Box A to report her time.  Ex. 8 (p.90). Employees are required to hand in their completed Schedules to their supervisor every other week at the team meeting.  Ex. 14 (p.25).  The Schedules are sent to payroll, where they are stored.  Ex. 7.

If there was overtime identified on the completed Schedule, the Campus Director corresponded with an employee in the Human Resources office named Polly Greggs.  Greggs would then note the hours on a Salary Overtime Sheet, which was then submitted to payroll for

---

[6]      "Employers may use any timekeeping method they choose . . . . Any timekeeping plan is acceptable as long as it is complete and accurate."  Ex. 17 (U.S. Department of Labor, Fact Sheet #21: Recordkeeping Requirements under the FLSA).  For employees working on fixed schedules, the employer may maintain "the schedule of the daily and weekly hours the employee normally works," and for "weeks in which more or less than the scheduled hours are worked, [a record which] shows that exact number of hours worked each day and each week."  29 C.F.R. § 516.2(c) & (2).  *See* Ex. 18 (U.S. Department of Labor, Overtime Final Rule and the Non-Profit Sector) ("the employer may simply keep a record of the schedule and indicate the number of hours the worker actually worked only when the worker varies from the schedule.").

[7]      The forms differed depending on whether the Counselor/Parents were working ten days on/four days off, or five days on/two days off.  *Compare* Ex. 19 (GJR_00000259-260) and 20 (GJR_00000261-262).

[8] Above the two boxes, the Schedule stated: "EXPLAIN BELOW IF THERE IS A DEVIATION IN YOUR SCHEDULE."  Ex. 19.  Box A asked for: "EXPLANATION FOR ANY DAY FOR WHICH YOU DID NOT GET YOUR 3(OR 5) HOURS OFF AND WERE NOT ABLE TO TAKE COMPENSATORY TIME THE NEXT DAY."  Box B asked for: "EXPLANATION FOR WHY YOU WERE NOT ABLE TO TAKE COMPENSATORY TIME DURING THE SAME PAY PERIOD."  Ex. 19.

processing.  Exs. 1 (p.73); 3 (pp. 89-91); 5 (pp.4-6); 21 (VanHook I) (p.16); 4 (pp. 83-85, 92, 98-99); 22 (Morgan I) (p.47).[9]

However, the method utilized most of the time by the McEacherns and others to report time worked through their break periods was to e-mail their supervisor.  If the McEacherns were unable to get their five hours off on a given day, Mia McEachern would e-mail Morgan to let him know.  Ex. 26 (Mia's e-mails to Brad).  Morgan would then e-mail Polly Greggs to tell her that he approved the overtime hours.  Ex. 14  (p.18); Ex. 26 (e-mails from Brad).  Greggs would then turn in the overtime hours to payroll using a salary overtime sheet, and the McEacherns would get paid for that time.  Exs. 14 (p.19); 6 (p.17); 8 (pp.93-108); Ex. 29 (Salary Overtime Sheets).  The McEacherns testified regarding this reporting practice:

> Q.     So, is it fair to say that this is how it would typically work:  You would e-mail Brad.  He would then tell Polly that he approved the hours.  And then, you would get paid for the overtime for that period?
> A.     Yes.

Ex. 8 (pp.106-107).

> Q.     So fair to say, Mr. McEachern, that your wife emailed George Junior, said you worked overtime, and then you were paid for overtime.  Do you agree with that?
> A.     Yes.

Ex. 11 (p.170).  Other Counselor/Parents would also utilize e-mails to report their overtime hours.  Ex. 14 (p.17).  Morgan testified that he instructed the McEacherns to e-mail him their overtime hours so that he could "get them turned in on time, for one, and to document, keep a

---

[9] Plaintiffs used the Schedules to report some of their overtime hours.  Ex. 23 (GJR_00000280).  Consider Exhibit 23, which is a Counselor/Parent Schedule for the week of January 1, 2017 that was altered by Mia McEachern in Box A as follows: "2-6-17 - worked 6 am-10pm - Jamaal[9] was off the schedule.  2-7-17 - worked 6 am to 10 pm - Jamaal was off the schedule."  This Schedule was signed by Morgan on February 15, 2017, which indicates that the hours were approved.  Greggs recorded these as 10 overtime hours on a salary overtime sheet using the code 132, which is the code for work as a Counselor/Parent.  Ex. 24 (GJR_00001108).  Mia McEachern was paid for these 10 overtime hours on March 10, 2017.  Ex. 25 (GJR_00001107).

record of it." Ex. 14 (p.32-33). Morgan has never denied a request for overtime hours after the hours had already been worked by Counselor/Parents. Exs. 14 (p.22): 8 (p.91) (testifying that she does not remember a time where her overtime was not approved). There were other times that Mia McEachern would call Morgan to report her hours instead of sending an email.[10] Ex. 8 (p.107-108). Mia would e-mail or call Morgan often to report overtime hours, though she preferred to e-mail him because this was an easy way to contact him. Ex. 8 (p.153; 166).

Lastly, if the Counselor/Parent worked in a capacity other than as a Counselor/Parent, there may have been other methods of recording his or her time. For example, Donald McEachern kept time with punch cards when he worked as a Clinical Manager. Ex. 11 (p.110). Neither Plaintiff claims they were not paid for hours worked in another job for GJR, such as Night Staff or Clinical Manager. Exs.11 (pp.55-56); 8 (pp.55-56).

Regardless of the method used to record time, when the McEacherns notified GJR that one or both of them worked outside their normal schedule, GJR paid the McEacherns. Ex. 7. This case, then, is not about the hours the McEacherns reported, because they were paid for those hours. Rather, this case is about the hours the McEacherns claimed to have worked, but never reported.

### b.      Any Unreported Work Was Not Suffered Or Permitted

As set forth above, GJR required Plaintiffs to report their time and offered them various ways to do so. Nevertheless, Plaintiffs seem to claim that they worked hours which they did not report, and for which they were not paid. That claim is wholly meritless.

First, it is clear the McEacherns did not work. They made two critical admissions during their depositions. First, they conceded that when Mia reported their overtime hours to their

---

[10]      Counselor/Parents could also call Greggs to tell her about overtime hours. If this was the case, Greggs would tell the Counselor/Parents to report the hours in an e-mail. Exs. 6 (p.21-22); 8 (p.91).

supervisor by using any of the reporting methods offered by GJR, they got paid.  Exs. 8 (pp.106-107); 11 (p.170).  Second, the McEacherns admitted that if they were able to get their five hours off, then Mia did not e-mail or call Morgan or anyone else at GJR.  Mia McEachern testified:

> Q.      So, if you did-- if you did get your break, you wouldn't have sent an email or called; correct?
> A.      Correct.

Ex. 8 (p.216).   And Donald McEachern testified:

> Q.      So would it be fair to assume that when you did get or there isn't an email or a message from your wife saying that you worked through your break, that in fact, you did get your break?
> A.      Sure.
> Q.      Okay.  On those days when she didn't submit a request for overtime for working through your breaks, that means you in fact were able to get your breaks, correct?
> A.      Sounds about right.

Ex. 11 (p.202).  The import of this evidence is obvious: when the McEacherns worked outside of their schedule, they reported the time.  When they did get their breaks, they did not report their time.  Thus, the central construct of the McEacherns' case--that they worked through their breaks but did not report it--is contradicted by their own testimony.  Therefore, the McEacherns simply have failed to meet their initial burden of proof by submitting evidence to show that they worked overtime hours for which they were not compensated.

But even if, somehow, this Court is inclined to credit the McEacherns' unsupported claim that they worked through breaks but did not report it, summary judgment must still be granted because such work was not suffered or permitted.  The McEacherns obviously knew how to report their time.  Mia McEachern meticulously kept track of her time while at GJR and reported any time that was worked outside her or her husband's normal work schedule.  Ex. 26.  She did so even after the fact.  For example, Mia McEachern e-mailed Greggs on September 4, 2016, claiming that, due to a misunderstanding about their schedules, she and her husband worked

hours outside of their schedule on the first and last days of their weekly or bi-weekly schedules from January 2015 through August 2016, detailing the hours they worked but were not paid. Ex. 27 (GJR_00000030-38).  The e-mail was forwarded to Morgan and Tom Jones, GJR's Vice-President of Human Resources.  Ex. 27 (GJR_00000030-38). Jones approved every single hour listed for payment, apart from one day that the McEacherns were on vacation and could not have been working, totaling 205 hours.  Ex. 27 (GJR_00000030-38).  GJR paid the McEacherns and both signed an acknowledgment that they were paid for these hours on September 13, 2016.  Ex. 27.  That acknowledgement stated that the McEacherns would "submit to [GJR] timely and accurate records of their hours worked as a condition of employment with [GJR]."  Ex. 27.

Nevertheless, the McEacherns failed to avail themselves of the methods available to report any overtime they claim they worked outside of their schedule, i.e., working during the break periods.  As the case law indicates, the FLSA's "suffered or permitted" construct is a two-way street, with the employee bearing an important role in advising his or her employer regarding work performed. The McEacherns' work was almost entirely unsupervised, and they were charged with reporting uncompensated hours using one of the various methods offered by GJR for reporting time.  The McEacherns routinely reported hours that they could not get off, and it was not until this litigation was commenced that GJR learned that there were additional uncompensated hours for which the McEacherns were claiming they did not get paid.  As a result, GJR had no actual or constructive knowledge that this work was being performed.

The facts here place this litigation squarely within the holdings of those cases discussed above where the courts found that the employer did not suffer or permit the work which the plaintiffs claim was uncompensated.  Not to put too fine a point on those cases, but they stand for the proposition that if employees do not report time per the employer's requirements, and the

employer does not have any reasonable basis for knowing what or even that the employees worked, the work was not suffered or permitted and therefore was not compensable.  *See, e.g.* *Wood*, 192 F. App'x at 379 (employer always compensated the plaintiff for overtime that he reported); *White*, 699 F.3d at 877, ("[employer] established a system to compensate its workers for time worked during meal breaks.  When [plaintiff] utilized the system she was compensated and when she failed to use the system she was not compensated."); *Forrester*, 646 F.2d at 414 (plaintiff testified that had he reported the overtime hours, he would have been paid for that time); *Hall*, 2013 WL 4855328, at *14 (no evidence that supervisor was aware of post-shift work, and plaintiff's deposition testimony that she had to perform post-shift work was contradictory); *Summerfield*, 1983 WL 31221, at *7 (plaintiff failed to establish that the employer was aware of any overtime work).  The record is replete with evidence that the McEacherns were aware how to report overtime, used those methods to report overtime, even doing so after the fact, and that if the McEacherns made GJR aware of overtime work, GJR paid it.  Under the circumstances, there is no genuine issue that the GJR suffered or permitted any work by the McEacherns that it did not pay for.  Accordingly, the McEacherns simply do not have a claim under the FLSA.[11]

---

[11] Plaintiffs assert claims parallel to the FLSA under the Pennsylvania Minimum Wage Act ("PMWA"). The PMWA is interpreted consistently with the FLSA.  *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 612-13 (E.D. Pa. 2015) ("Various PAMWA provisions make specific reference to the FLSA and the fact that it should be read consistently with that statute."); *Masterson v. Fed. Exp. Corp.*, No. 07-CV-2241, 2008 WL 5189342, at *3 (M.D. Pa. Dec. 10, 2008) ("Pennsylvania courts have indicated that it is proper to give deference to the federal courts' interpretation of a federal statute when the state statute at issue substantially parallels the federal law.").  Accordingly, because Plaintiffs' FLSA claims fail, so do their PMWA claims.

## C.      The McEacherns Have No Right To Relief Under The WPCL

Courts in the Third Circuit have repeatedly explained that "the WPCL does not create a right to compensation....[r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." *Philadelphia Metal Trades Council v. Konnerud Consulting W., A.S.*, No. CV 15-5621, 2016 WL 1086709, at *5 (E.D. Pa. Mar. 21, 2016) (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)) (internal quotation marks omitted).   "[T]he weight of authority supports the view that there must be a 'contractual obligation' before relief can be granted under the WPCL." *Vasil v. Dunham's Athleisure Corp.*, No. 2:14CV690, 2015 WL 1296063, at *4 (W.D. Pa. Mar. 23, 2015).

Here, Plaintiffs fail to point to any "contractual obligation" that would entitle them to overtime wages under the WPCL.  First, the Complaint does not refer to any contract that was breached pursuant to the WPCL.  *See* Ex. 28 (Complaint) (pps.12-14) (Count II merely states that Defendants "failed and refused to pay Plaintiffs for all hours worked and to pay Plaintiffs their overtime pay rate as required by the [] WPCL," but does not identify a contractual obligation under the WPCL).   Courts have dismissed WPCL claims for this reason.  *See Philadelphia Metal Trades* Council, 2016 WL 1086709, at *5 (dismissing WPCL claim where plaintiff did not "plead that the CBA or another contractual obligation exists between the parties to establish a right to overtime compensation.").

Second, even if Plaintiffs had pled that they were entitled to relief pursuant to their C/P Agreements, which they did not, these agreements did not place any duty upon GJR to compensate the McEacherns for the hours they are claiming.  Exs. 28; 12, 13.  Specifically, the C/P Agreements provide that "[o]vertime in excess of the schedule must be approved in advance

by the supervisor or, if an emergency, immediately thereafter." Exs. 12, 13. It is undisputed that Plaintiffs did not report to anyone at GJR the additional hours for which they are seeking compensation. As such, they did not follow the provisions of the C/P Agreements, and GJR had no obligation to pay them any additional wages under those agreements. Thus, Plaintiffs' "failure to allege a contractually based entitlement to the disputed wages is fatal to [their] WPCL claim." *Vasil*, 2015 WL 1296063, at *5.

Third, as discussed above, GJR paid Plaintiffs everything to which they were entitled under the FLSA and PMWA. If there is no violation of FLSA and PMWA, there cannot be a violation of the WPCL. For these reasons, Plaintiffs WPCL claims should be dismissed.

**D.     The McEacherns Are Exempt Under the FLSA**

Additionally, Plaintiffs are exempt employees under the FLSA and are not entitled to the overtime protections of the FLSA (or PMWA), meaning their claims for unpaid overtime fail. The FLSA, pursuant to 29 USC § 213(b)(24)(B), provides an overtime exemption for houseparents, i.e., "any employee who is employed with his spouse by a nonprofit educational institution to serve as the parents of children . . . who are enrolled in such institution and reside in residential facilities of the institution, while such children are in residence at such institution, if such employee and his spouse reside in such facilities, receive, without cost, board and lodging from such institution, and are together compensated, on a cash basis, at an annual rate of not less than $10,000[.]" 29 USC § 213(b)(24).

GJR is a nonprofit institution that has a school on campus that provides education to the residential youth it serves. Ex. 7. *See also* https://gjr.org/about-george-junior-republic; https://gjr.org/public-school-education/academics. Plaintiffs are employees of GJR who serve as parents to the children in their cottage. Plaintiffs resided in their cottage and received, without

cost, board and lodging from the GJR.  Ex. 8 (p.31).  The McEacherns' compensation exceeded $10,000.  Ex. 12, 13.  Thus, on its face, Plaintiffs plainly fall within the houseparent exemption.

The question of the reach of 29 USC § 213(b)(24)(B) is  a question of first impression in the Third Circuit, but other courts have examined the exemption.    In *Grindstaff v. AGAPE House, Inc.*, for example, the defendant, similar to GJR, was a "residential institution for the education and treatment of boys between the ages of 10 and 16 years of age" who at the time of admission were determined to be unmanageable or delinquent.  1988 WL 1045132, at *1.  The plaintiffs were employed as teaching parents, and like the McEacherns, were required to reside with the boys and serve as their role models in a simulated family setting.  *Id.*  The court found that the plaintiffs met all of the elements under section 213(b)(24) and were exempt from coverage under the FLSA. *Id.* at *4.  *But see Gaby v. Omaha Home for Boys*, 1997 WL 406275, at *4 (finding that the defendant was not an "educational institution" within the meaning of the statute).  Given the undisputed facts of this case, Counselor/Parents are exactly the type of employee that 29 USC § 213(b)(24)(B) is intended to cover, and this Court should find that Plaintiffs fall within the exemption.

### III.    CONCLUSION

For the reasons set forth above, this Court should grant Defendants' motion for summary judgment and dismiss Plaintiffs' complaint with prejudice.  The McEacherns were paid for time worked outside of their normal schedule (i.e., their breaks) whenever they submitted time pursuant to the GJR timekeeping practices.  Based upon their own admissions, the McEacherns cannot argue that they worked time outside of their normal schedule for which they failed to submit time.  But if they did somehow work time outside of their normal schedule and were not paid, such work is not compensable because GJR did not suffer or permit such work, insofar as

they had no basis for knowing that the McEacherns engaged in such work and the McEacherns failed to follow GJR timekeeping practices by not submitting the time.

Respectfully submitted,

/s/  Michael A. Pavlick
Michael A. Pavlick, PA ID No. 60914
Ali J. Parker, PA ID No. 318607

K&L GATES LLP
K&L Gates Center
210 Sixth Ave.
Pittsburgh, PA  15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)
michael.pavlick@klgates.com
ali.parker@klgates.com

Attorneys for Defendants.

Dated:  April 1, 2019

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 1, 2019, a copy of the foregoing Defendants' Brief in Support of its Motion for Summary Judgment was served by first class mail and e-mail today upon the following counsel of record for plaintiff:

Barbara Seman Ochs
Tara Mooney
19 Jefferson Ave.
P.O. Box 949
Sharon, PA 16146
724-342-6835
ochs@eglolaw.com
mooney@eglolaw.com

/s/ Ali J. Parker
Ali J. Parker