IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIA MCEACHERN and DONALD MCEACHERN, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) Civil No. 18-395 |
| GEORGE JUNIOR REPUBLIC IN PENNSYLVANIA, and GEORGE JUNIOR REPUBLIC | ) ) ) ) |
| Defendants. | ) ) |

**OPINION**

Plaintiffs Mia McEachern and Donald McEachern bring this wage payment dispute action against Defendants George Junior Republic in Pennsylvania ("GJR") and its parent company, George Junior Republic ("Parent") (collectively, "Defendants") asserting that Defendants illegally failed to pay the McEacherns overtime wages for working through their break periods, in violation of federal and state wage and hour laws. Plaintiffs assert the following claims against Defendants: Count I - Failure to Pay Minimum Wage and Overtime Pursuant to Fair Labor Standards Act ("FLSA"); Count II – Violations of the Pennsylvania Wage Payment and Collection Law and the Pennsylvania Minimum Wage Act; and Count III – Unjust Enrichment. Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 24. As more fully explained below, Defendants' Motion will be granted.

I.  BACKGROUND

All material facts set forth below are undisputed unless otherwise indicated. The court primarily cites to Defendants' Concise Statement of Material Facts, ECF No. 28, as admitted by Plaintiffs in their Responsive Concise Statement of Material Facts, ECF No. 31. Where the

parties disagree about a fact, or engage in argument about an alleged fact, the court will cite to Plaintiffs' Responsive Concise Statement of Material Facts or to the specific evidence of record supporting the fact. Additional material facts may be discussed elsewhere in this opinion, in context. In determining the material facts in this case, all reasonable inferences are drawn in favor of the nonmoving party.

GJR is a non-profit operating subsidiary of its Parent, George Junior Republic. Defs.' Concise Stmt. Mat. Facts ¶ 5. GJR operates a private, non-profit 24-hour residential treatment facility for delinquent and dependent boys, ages eight to eighteen, in Grove City, Mercer County, Pennsylvania. *Id.* ¶ 1. GJR employs more than 500 individuals in Grove City. *Id.* ¶ 4. GJR offers residential living facilities for over 300 youths on its 500-acre campus, as well as a wide variety of therapeutic activities and continuing care. *Id.* ¶ 2. GJR also offers fully accredited educational programs administered by the Grove City Area School District. *Id.* ¶ 2; Pltfs' Responsive Concise Stmt. Mat. Facts ¶ 3; Dep. Thomas Jones, at 9 (Ex. 1 to ECF No. 27-1).

GJR at one time maintained approximately 30 open-living cottages in Grove City for those youth who lived on campus during school semester and during the summer. *Id.* ¶ 6. The number of such cottages has decreased in recent years as smaller units have been phased out. *Id.* The cottages are staffed principally by Counselor/Parents. *Id.* ¶ 8. The Counselor/Parents, who must be a husband and wife team, live in each cottage (at GJR's expense), and they implement GJR's behavioral model. *Id.* ¶ 9. They are principally responsible for supervising the youths assigned to their cottage when students are not at school or engaged in other activities. *Id.* The Counselor/Parents live in attached quarters that are separated from the youths' living quarters by a connecting door. *Id.* ¶ 10; Pltfs' Responsive Concise Stmt. Mat. Facts ¶ 10.

GJR hired the McEacherns as Counselor/Parents on December 1, 2014. Defs.' Concise Stmt. Mat. Facts ¶ 22. When the McEacherns started their employment, the cottages either housed up to eight or ten youth. *Id.* ¶ 7. While working, the Counselor/Parents are not directly supervised; that is, there is no one directly monitoring their day-to-day work activities and their interactions with the youth. *Id.* ¶ 11. When the McEacherns started at GJR, Counselor/Parents worked one of two schedules: five days on and two days off (for 10-youth cottages); or ten days on and four days off (for eight-youth cottages). *Id.* ¶ 12. While the hours of work varied on the first and last days of the schedule, the Counselor/Parents' typical workday was scheduled to begin at 6:00 a.m. and end at 10 p.m. *Id.* ¶ 13; Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 13. During the typical 16-hour shift, each Counselor/Parent in each cottage was expected to self-schedule five hours of uncompensated free time if in an eight-bed cottage. Defs.' Concise Stmt. Mat. Facts ¶ 14. And, since January 3, 2015, each was to self-schedule three hours of uncompensated free time if in a ten-bed cottage. *Id.* Under this schedule, Counselor/Parents are scheduled to work 52 hours per work week. *Id.* ¶ 15.

GJR pays Counselor/Parents an annual "salary" of $22,500, anticipating a 52 hour workweek, paying a regular hourly rate of $7.46 for the first 40 hours, plus $11.19 for the remaining hours worked. *Id.* ¶¶ 16-18; Equal Opportunity Family Living Agreement, ¶ 3, Ex. I, ECF No. 32-9. If Counselor/Parents worked during their free time and if they were not able to take make up free time later, GJR's policy was that Counselor/Parents would be paid a time and a half hourly rate for those extra hours worked. *Id.* ¶ 19. At 10 p.m. on each work evening Counselor/Parents were relieved by an Evening Childcare Worker, who worked until 6:00 a.m. the next morning, the beginning of Counselor/Parents workday. *Id.* ¶ 20. On their days off, the Counselor/Parents were relieved of their duties by a Counselor/Parent Assistant. *Id.* ¶ 21. The

3

McEacherns maintain that they were not able to exercise their break periods on a regular basis, such that they often worked more than 52 hours per week. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶¶ 14-15. They also asset that they were not paid overtime wages for such additional time. *Id.*

The McEacherns each signed GJR's Equal Opportunity Family Living Agreement ("C/P Agreement"). Defs.' Concise Stmt. Mat. Facts ¶¶ 23[1] & 33; C/P Agreements, Exs. 12 & 13. Paragraph 2 of the C/P Agreement provides:

> 2. The Employee agrees to perform the duties of a Counselor/Parent during a workweek commencing at 2:00 p.m. on Saturday and terminating at the same time the following Saturday.
> . . . The Employee acknowledges that the duties hereby undertaken may require irregular work hours, and hours in excess of forty (40) hours per week, but that the normal work week shall consist of 52 hours of work and a normal day of work shall usually be: 6:00 a.m. to 10:00 p.m. with five hours of uncompensated free time within that period.
>  Employee will decide with the other Counselor/Parent which of the following schedules they will work:
>  A. 6:00 a.m. to 5:00 p.m.     11 hours
>  B. 11:00 a.m. to 10:00 p.m.   11 hours
>  Employees may trade specific assigned hours with their co-Counselor/Parents as long as it results in each working eleven hours per day. Overtime in excess of the schedule must be approved in advance by the supervisor or, if an emergency, immediately thereafter.

C/P Agreement ¶ 2. Paragraph 3 of the C/P Agreement provides:

> 3. As compensation for all services rendered under this Agreement, [GJR] will pay the Employee each week for 40 hours of straight time and 12 hours of overtime for annual earnings of $22,5000 less all applicable deductions. Payment for duly authorized additional work in excess of fifty-two hours in a work week, will be based on the premium rate of $11.19, which is one hundred and fifty percent of the regular rate of $7.46, which is paid for the first forty hours.

C/P Agreement ¶ 3. Mr. McEachern testified that he understood that overtime had to be approved in advance by the supervisor, or if in an emergency, immediately thereafter. Defs.' Concise Stmt. Mat. Facts ¶ 24. The McEacherns worked at Wettick cottage from December 2014 to June 2017; and at Glenn cottage, from June 2017 until the end of their employment in

---

[1] In response to statement of fact 23, Plaintiffs purport to "deny" certain aspects of the C/P Agreement, but their responsive statement does not deny the language of the C/P Agreement. Plaintiffs' response focuses upon whether they were paid in accordance with the C/P Agreement. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 23.

January 2018. *Id.* ¶ 25. At Wettick, an eight-bed unit, the McEacherns' schedule was ten days on, four days off. *Id.* ¶ 26. The McEacherns reported to Brad Morgan, a Campus Director. *Id.* ¶ 27. At Glenn, a ten-bed unit, the McEacherns worked five days on and two days off. *Id.* ¶ 28. The McEacherns' were supervised by Darrell Reppart for approximately one month before they were again supervised by Brad Morgan until the termination of their employment. *Id.* ¶ 29. The McEacherns assigned supervisor met with the McEacherns weekly, but neither supervisor maintained direct oversight of their work. *Id.* ¶ 30. Plaintiffs assert that there were also some weeks when the supervisors did not even meet with them. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 30.

According to GJR, because Counselor/Parents are largely unsupervised, if they work during their free time, GJR does not know about it unless the Counselor/Parents document it. Defs.' Concise Stmt. Mat. Facts ¶ 35. Plaintiffs deny this fact and assert that GJR has both actual and constructive knowledge of Counselor/Parents working during their free time. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 35. As regards the GJR documentation process, at the beginning of each year, Counselor/Parents receive a yearly supply of Schedules ("Counselor/Parent Schedules") to be used, in part, to account for their salaried regular scheduled 52-hour work week. *Id.* ¶ 36. The Counselor/Parent Schedules differ depending on whether the Counselor/Parents were working ten days on/four days off, or five days on/two days off. *Id.* ¶ 37. Employees were required to submit their completed Counselor/Parent Schedules to their supervisor every other week at the team meeting; however, in practice the supervisors did not collect or receive the completed Schedules every two weeks. *Id.* ¶ 40; Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 40. The Counselor/Parents were nonetheless paid their salaries as scheduled. Defs.' Concise Stmt. Mat. Facts ¶ 40.

Below each employee's preprinted salaried regular schedule, 52-hour work week, calendar, is a section that states:

> EXPLAIN BELOW IF THERE IS A DEVIATION IN YOUR SCHEDULE
>
> A. <u>EXPLANATION FOR ANY DAY FOR WHICH YOU DID NOT GET YOUR 3 [or 5] HOURS OFF AND WERE NOT ABLE TO TAKE COMPENSATORY TIME THE NEXT DAY.</u>
> _____
> _____
> _____
> _____
>
> B. <u>EXPLANATION FOR WHY YOU WERE NOT ABLE TO TAKE COMPENSATORY TIME DURING THE SAME PAY PERIOD.</u>
> _____
> _____
> _____
> _____

Ex. 19, ECF No. 27-19; Defs.' Concise Stmt. Mat. Facts ¶ 38. GJR asserts that if there was overtime identified on the completed Counselor/Parent Schedule, the Campus Director corresponded with an employee in the Human Resources office named Polly Greggs, who would note the hours on a Salary Overtime Sheet, which was then submitted to payroll for processing. Defs.' Concise Stmt. Mat. Facts ¶ 42.

While Plaintiffs admit to the Counselor/Parent Schedules, Plaintiffs deny that Counselor/Parents can explain why they were not able to take their scheduled hours off because the Schedules are not utilized by payroll; therefore, any explanation they provided was meaningless. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶¶ 38, 42. They also deny that overtime documented on the Counselor/Parent Schedule was noted on the Salary Overtime Sheet by Ms. Greggs. *Id.* ¶ 42. They also assert that the Counselor/Parent Schedules did not go to Ms. Greggs. *Id.* Plaintiffs also maintain that they attempted to, or did, use the Counselor/Parent Schedules to report some of their overtime hours; but any such attempt did not result in payment for overtime hours, because GJR's payroll department does not use the Counselor/Parent

Schedules in preparation of payroll. Defs.' Concise Stmt. Mat. Facts ¶ 43; Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 43.

In contrast to Plaintiffs' assertions, GJR points to Ms. McEacherns' Counselor/Parent Schedule for the pay period ending February 11, 2017. Ex. 23, ECF No. 27-23. Ms. McEachern noted in Box A that on February 6, 2017 and February 7, 2017, she worked the full schedule from 6:00 a.m. to 10:00, and thus was unable to take her five-hour break, because her husband was "off the schedule." *Id.* Her supervisor, Mr. Morgan, signed Ms. McEachern's Schedule on February 15, 2017. *Id.* Using GJR's undated Salary Overtime Sheet, Ms. Greggs recorded 10 overtime hours at code 132, which is the code for work performed as a Counselor/Parent. Defs.' Concise Stmt. Mat. Facts ¶ 44, Ex. 24, ECF No. 27-24. GJR's Preview wage statement indicates that Ms. McEachern was given credit and was paid for said documented 10 hours of overtime work on pay date March 10, 2017. Defs.' Concise Stmt. Mat. Facts ¶ 45; Ex. 25, ECF No. 27-25. The McEacherns deny that the 10 overtime hours on that specific salary overtime sheet were "necessarily hours during which Ms. McEachern worked through her break." Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 44.

The evidence demonstrates that Ms. McEachern primarily emailed Mr. Morgan to report overtime when they worked through their breaks. Mr. Morgan testified that he instructed the McEacherns to email him their overtime hours so that he could "get them turned in on time, for one, and to document, keep a record of it." Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 50. Mr. Morgan also testified that his instruction to email overtime hours was not GJR's official policy, but that email was his personal preference. *Id.* Other Counselor/Parents would also utilize emails to report their overtime hours. Defs.' Concise Stmt. Mat. Facts ¶ 49. Thus, when the McEacherns were unable to get their five hours off on a given day, Ms. McEachern emailed

7

Mr. Morgan to let him know. *Id.* ¶ 46; Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 46. Ms. McEachern would email or also call Mr. Morgan often to report overtime hours, though she preferred to email him because this was an easy way to contact him. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 53. When Ms. McEachern called to report unscheduled overtime, Mr. Morgan would ask her to also email the notice of the request for overtime in order to maintain a record. Dep. Brad Morgan, Dec. 20, 2018, at 15 & 32-33, ECF Nos. 33-5 & 27-14. Upon receipt of the McEacherns' emails, Mr. Morgan would then email Ms. Greggs to tell her that he approved the overtime hours. Defs.' Concise Stmt. Mat. Facts ¶ 47. Mr. Morgan never denied a request for overtime hours after the hours had already been worked by Counselor/Parents. *Id.* ¶ 51. Ms. Greggs would then turn in the overtime hours to payroll using a Salary Overtime Sheet, and the McEacherns would get paid for that time. *Id.* ¶ 48. The McEacherns maintain that Mr. Morgan only "sometimes" emailed Ms. Greggs to report approved overtime. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 47. They assert that they were not accurately compensated for all overtime hours that they reported. *Id.* Counselor/Parents could also call Ms. Greggs to tell her about overtime hours, and she would tell the Counselor/Parents to report the overtime hours in an email. Defs.' Concise Stmt. Mat. Facts ¶ 52.

Ms. McEachern testified that she only "sometimes" reported such overtime to Mr. Morgan through email. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 46. Ms. McEachern asserts that she did not email Mr. Morgan every time they were unable to get their five hours off; instead, she used other methods to attempt to report overtime, such as by telephone and in-person notifications to Mr. Morgan. *Id.* ¶ 46. The McEacherns deny that Ms. Greggs recorded all of their overtime hours on a Salary Overtime Sheet, and they deny that they were paid for all overtime hours worked. *Id.* ¶ 48.

Citing their experts' report, the McEacherns deny that they were properly compensated for all hours worked outside of their normal schedule and for when they notified GJR of such hours. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 56; Ex. F, Damages Calculation Report, Feb. 11, 2019, ECF No. 32-6. The McEacherns acknowledged the accuracy and correlation between their emails to report overtime and the payroll records reflecting full payment for said overtime. Defs.' Concise Stmt. Mat. Facts ¶ 57. The McEacherns also agreed that email documentation was how they would "typically" get paid for overtime; however, they deny that they were paid for all overtime hours worked or reported. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 57. The McEacherns admitted that when they were able to get their five-hour break, and thus they worked no overtime, Ms. McEachern did not email or call Mr. Morgan or anyone else at GJR. Defs.' Concise Stmt. Mat. Facts ¶ 58. Tom Jones, GJR's Vice-President of Human Resources, states that the "McEacherns were paid by [GJR] for all time they submitted to [GJR] for work outside of their normal schedule." Defs.' Concise Stmt. Mat. Facts ¶ 56; Ex. 7, Decl. Tom Jones, Apr. 1, 2019, at ¶ 5 (ECF No. 27-7). On September 4, 2016, Ms. McEachern emailed Ms. Greggs claiming that, due to a misunderstanding about their schedules, she and her husband worked hours outside of their schedule on the first and last days of their weekly or bi-weekly schedules from January 2015 through August 2016. Defs.' Concise Stmt. Mat. Facts ¶ 59. Said email details the hours Ms. McEachern documented that they worked but were not paid. *Id.* The email was forwarded to Mr. Morgan and Tom Jones, GJR's Vice-President of Human Resources. *Id.* ¶ 60. Mr. Jones approved every hour listed for payment, apart from one day when the McEacherns were on vacation and could not have been working. *Id.* ¶ 61. The total overtime approved, for which the McEacherns were paid, was 205 hours. *Id.* The McEacherns signed an acknowledgment that they were paid for these hours on September 13,

2016. *Id.* ¶ 62. The acknowledgement also provided that the McEacherns would "submit to [GJR] timely and accurate records of their hours worked as a condition of employment with [GJR]." *Id.* ¶ 63. The McEacherns assert that, despite their signed acknowledgement, GJR never provided a method for submitting accurate timekeeping records. Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 63.

Mia McEachern was fired on January 16, 2018. Defs.' Concise Stmt. Mat. Facts ¶ 31. GJR maintains that she was fired for falsifying paperwork; however, Ms. McEachern denies that she falsified any paperwork. *Id.* ¶ 31; Pltfs.' Responsive Concise Stmt. Mat. Facts ¶ 31. Because Counselor/Parents are husband and wife teams, Donald McEachern's employment was terminated when Mia's employment was terminated. Defs.' Concise Stmt. Mat. Facts ¶ 32.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 578 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).

Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 322, 325; *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007). If the movant meets his or her burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex*, 477 U.S. at 323-25. The nonmoving party must go beyond his or her pleadings and designate specific facts using affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 260 (3d Cir. 1989). Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but

11

rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). Inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## III. DISCUSSION

The legal principals which govern FLSA overtime claims are undisputed.[2] An employer may not employ a non-exempt employee for a work week longer than 40 hours unless the employee receives overtime compensation at a rate not less than one and one-half times his regular rate. 29 U.S.C. § 207(a)(1). The term "employ" encompasses both an employer's actual and constructive knowledge. 29 U.S.C. § 203(g). Employees may prevail on an FLSA claim for unpaid overtime by proving that they "were suffered or permitted to work without compensation." *Stanislaw v. Erie Indem. Co.*, 2012 WL 517332, at *3 (W.D. Pa. Feb. 15, 2012) (quoting *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007)). To succeed on a "suffer or permit" FLSA claim, a plaintiff must demonstrate that "(1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work." *Stanislaw*, 2012 WL 517332, at *3. An employer cannot stand idly by and allow an employee to perform overtime work, even if the employee does not make a claim for the overtime compensation. 29 C.F.R. § 785.11 (where "employer knows or has reason

---

[2] The Pennsylvania Minimum Wage Act is interpreted consistently with the FLSA. *Ford-Green v. NHS, Inc.*, 106 F. Supp. 3d 590, 612-13 (E.D. Pa. 2015). The Pennsylvania Wage Payment and Collection Law claim is derivative of their FLSA and Pennsylvania Minimum Wage Act claims insofar as the Pennsylvania Minimum Wage Act provides a remedy for unpaid wages.

12

to believe" that employee is working beyond the end of shift "the time is working time" and must be compensated.)

Defendants contend that summary judgment is appropriate for three reasons. First, there is no evidence that GJR "suffered or permitted" the McEacherns to work overtime for which they are currently seeking compensation. Second, the McEacherns have no right to relief under the Pennsylvania Wage Payment and Collection Law, because there is no contractual obligation entitling them to such relief. Finally, Defendants contend that all claims should be dismissed because the McEacherns are exempt employees pursuant to the houseparent exception under the Fair Labor Standards Act ("FLSA"). The Court agrees that GJR paid the McEacherns for all worked and reported unscheduled overtime and that GJR did not suffer or permit the McEacherns to work overtime hours, thus the Plaintiffs have not established any violation of the FLSA. Since the Pennsylvania Minimum Wage Act is interpreted consistently with the FLSA, and the Pennsylvania Wage Payment and Collection Law claim is derivative of their FLSA and Pennsylvania Minimum Wage Act claims, the Plaintiffs' Pennsylvania claims fail. Plaintiffs' unjust enrichment claim also fails as the McEacherns are unable to show that they conferred a benefit on GJR by working overtime for which GJR did not pay them. Therefore, all Plaintiffs' claims fail. As such, the Court need not address GJR's second and third arguments.

This case concerns Plaintiffs' request for overtime compensation for hours worked when the nature of their job required either or both of them to work through their break time, resulting in worked unscheduled overtime for which they were not compensated. The McEacherns were scheduled to work 52 hours per work week.

As noted above, the Counselor/Parent Schedules include sections for an employee to explain any deviations in their work hours from their scheduled hours. In practice, the

Counselor/Parent Schedules were not regularly used to account for and pay Counselor/Parents for their reported unscheduled overtime hours. Instead, email was the primary reporting method used by the parties. The McEacherns emailed their supervisor, Mr. Morgan, whenever they worked unscheduled overtime. Ms. McEachern would notify Mr. Morgan to advise when either or both Mr. or Ms. McEachern worked through their break. Ms. McEachern testified that she did not always email when either she or her husband worked unscheduled overtime. She testified that sometimes she would make a telephone call, either to Mr. Morgan or Ms. Greggs, to report overtime. Mr. Morgan testified that when Ms. McEachern called to report unscheduled overtime, he would ask her to also email the notice of the request for overtime in order to maintain a record.

The McEacherns emailed to report having worked the following unscheduled overtime hours for which they requested overtime compensation:

- May 4, 2016, May 24, 2016; May 25, 2016; May 26, 2016;
- June 7, 2016; June 25, 2016; June 26, 2016;
- July 5, 2016; July 19, 2016; July 26, 2016;
- August 8, 2016; August 23, 2016; August 30, 2016;
- December 15, 2016;
- January 11, 2017; January 12, 2017; January 17, 2017; January 20, 2017;
- February 6, 2017; February 7, 2017;[3]
- August 3, 2017; August 24, 2017; August 28, 2017; August 29, 2017; August 31, 2017;
- September 1, 2017; September 5, 2017; September 6, 2017; September 7, 2017; September 8, 2017; September 12, 2017; September 14, 2017; September 15, 2017;
- October 3, 2017; October 5, 2017; and
- December 27, 2017; December 28, 2017; December 29, 2017.

---

[3] Ms. McEachern also reported her unscheduled overtime worked for February 6 and 7, 2017, on Part A of the Counselor/Parent Schedule for the relevant pay period. Ex. 23, ECF No. 27-23.

Ex. 26, ECF No. 27-26; Ex. 32, ECF No. 33-3. For each of these emails Mr. Morgan approved the McEacherns' request for overtime pay. *Id.* GJR's evidence establishes that the McEacherns were paid appropriate overtime compensation for all such reported and worked unscheduled overtime. *See* Exs. 24, 25, 29, & 33 (ECF Nos. 27-29, 27-24, 27-25, & 33-4). Tom Jones, GJR's Vice-President of Human Resources, stated that the "McEacherns were paid by [GJR] for all time they submitted to [GJR] for work outside of their normal schedule." Ex. 7, Decl. Tom Jones, Apr. 1, 2019, at ¶ 5 (ECF No. 27-7). In addition, in September 2016, when the McEacherns provided late notice to GJR that, due to their misunderstanding about breaks on the first and last days of a work week from January 2015 through August 2016, they had not timely reported their worked unscheduled overtime, Mr. Jones approved overtime payment for those 205 overtime hours, except for requested hours for when they were on vacation. Ex. 27, ECF No. 27-27. Upon receipt of that payment, the McEacherns each signed an acknowledgment that they would "submit to [GJR] timely and accurate records of their hours worked as a condition of employment with [GJR]." Ex. 27, ECF No. 27-7, at 7. Thus, the emails, payroll and related payroll evidence, along with the Declaration of Mr. Jones, establishes that every time the McEacherns notified GJR that either or both worked unscheduled overtime, GJR paid them for all overtime reported.

The McEacherns contend that they were not paid for all the worked and unscheduled overtime that they actually reported to GJR. GJR has produced evidence to demonstrate that GJR in fact paid the McEacherns for all overtime that they reported. The McEacherns' only response to such clear evidence is their contention that the documents provided by GJR are confusing and fail to prove that their reported unscheduled overtime was properly paid. The McEacherns rely in part on their experts' report, but the Court agrees with Defendants that the

15

McEacherns' expert report relies upon calculations dependent upon information provided by the McEacherns. The Plaintiffs have produced no evidence to carry their burden to sufficiently discredit the evidence that establishes that all reported overtime hours were properly paid. There is no evidence that establishes any genuine issue of material fact in this case. The evidence demonstrates that GJR paid the McEacherns for all reported unscheduled overtime they worked. As far as compensation for overtime the McEacherns worked, and then reported to GJR, Plaintiffs have failed to demonstrate that they worked such overtime without compensation. *Stanislaw*, 2012 WL 517332, at *3.

The McEacherns also claim they are due compensation for the worked, unscheduled and unreported overtime, because GJR suffered or permitted such overtime work. However, where an employee is provided a method for reporting unscheduled overtime and has demonstrated experience in successfully using said method in the past, when the employee does not report worked overtime, the employer cannot be said to have suffered or permitted such unreported overtime work. *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 380–81 (6th Cir. 2006) (where employee reported some overtime, employer had no reason to suspect that he neglected to report other overtime hours); *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981) (where employer regularly paid employee for all reported overtime, employer did not suffer or permit employee to work unreported overtime). Here, the evidence shows that the McEacherns knew the circumstances that would cause one or both of them to work through their break; they knew that such worked unscheduled overtime must be reported in order to get paid; and they knew how to report it and to whom. They also had past experience to know that GJR paid them for overtime they had reported. Ms. McEachern agreed that, if they were able to take their breaks, she would not send an email to report any worked unscheduled overtime. Dep. Mia

16

McEachern, Dec. 17, 2018, at 216 (Ex. 8, ECF No. 27-8). Mr. McEachern testified that it "sounds about right" that, if Ms. McEachern did not submit a request for unscheduled overtime for working through breaks, then it meant that he was able to take his break. Dep. Donald McEachern, Dec. 14, 2018, at 202 (Ex. 11, ECF No. 27-11). There is no violation of the FLSA if the employee performs uncompensated work but "fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work." *Stanislaw*, 2012 WL 517332, at *4 (citations omitted). Thus, the McEacherns have not demonstrated that GJR suffered or permitted overtime work.

Next, the McEacherns claim that, even if they failed to report worked unscheduled overtime by email or otherwise, GJR still "suffered or permitted" such overtime work in violation of the FLSA, because GJR had both actual and constructive knowledge that the McEacherns regularly worked unscheduled overtime as Counselors/Parents. The McEacherns argue that, in providing care and supervision for 8 to 10 adolescent boys for 16 hours per day, the nature of the position necessarily caused one or both McEacherns to not take their scheduled breaks. GJR has a policy that when even one boy is present in the unit, both Counselor/Parents must also be present. Therefore, the McEacherns maintain that on most, if not all, days, this policy required them to work through their designated break periods. Plaintiffs argue that, since these circumstances attendant to the Counselor/Parent position were known to GJR, GJR had actual and constructive knowledge that the McEacherns worked through their scheduled breaks. The McEacherns further argue that their failure to report some of their worked unscheduled overtime was also due to the strenuous nature of the job. Given the ease by which they were permitted to report by email, this argument lacks merit. Further, the McEacherns reported their worked unscheduled overtime to request overtime compensation on numerous occasions. The

17

totality of circumstances leads to the conclusion that, when the McEacherns reported worked unscheduled overtime, GJR properly compensated them for the same. There is no evidence that GJR had actual or constructive knowledge that the McEacherns were working through their breaks at other times for which they failed to report. Therefore, GJR did not suffer or permit the McEacherns to work overtime in violation of the FLSA.

The McEacherns also challenge GJR's method of keeping track of payroll records. They assert that payroll records are not "complete and accurate" as required by the FLSA. The system, whereby Ms. McEachern would email her supervisor, or call or speak to him in-person, to notify GJR of worked unscheduled overtime, was not incomplete or inaccurate. The evidence demonstrates that the McEacherns used the email method to report compensation requests for over 200 hours of worked unscheduled overtime for thirty-eight separate working days from May 2016 through December 2017. The methods employed by GJR and the McEacherns resulted in accurate payment for reported worked unscheduled overtime. The Court therefore concludes that GJR's method of keeping track of employees' time and overtime does not violate the FLSA. Accordingly, summary judgment on the McEacherns' FLSA claim will be entered in favor of GJR and against the McEacherns.

As previously stated, the Pennsylvania Minimum Wage Act is interpreted consistently with the FLSA. *Ford-Green v. NHS, Inc*., 106 F. Supp. 3d 590, 612-13 (E.D. Pa. 2015). Because the McEacherns' FLSA claim fails, so does their claim asserted under the Pennsylvania Minimum Wage Act. Further, as the McEacherns' Pennsylvania Wage Payment and Collection Law claim is derivative of their FLSA and Pennsylvania Minimum Wage Act claims, such claim also fails. Therefore, the Defendants are entitled to Summary Judgment against the McEacherns on the McEacherns' Pennsylvania claims.

Finally, the McEacherns' unjust enrichment claim fails, as it depends on the McEacherns establishing that they provided a benefit to Defendants for which they were not paid. GJR properly paid the McEacherns for all overtime they worked and did not suffer or permit the McEacherns to work overtime for which they were not paid. Accordingly, Defendants are entitled to Summary Judgment against the McEacherns on the McEacherns' unjust enrichment claim.

IV. **CONCLUSION**

Summary judgment as a matter of law will be granted in favor of Defendants George Junior Republic in Pennsylvania and George Junior Republic, and against Plaintiffs Mia McEachern and Donald McEachern as to all claims.

An appropriate order will be entered.

Dated: March 19, 2020

_____
Marilyn J. Horan
United States District Court Judge